# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

WALTER KURKA,

        Plaintiff,

vs.

JOHN PROBST, et al.,

        Defendants.

Case No. 3:13-cv-00034-SLG

## ORDER RE MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

      This is an action by Walter Kurka, a self-represented litigant, asserting federal constitutional violations pursuant to 42 U.S.C. § 1983 as well as state law defamation and malicious prosecution claims against Alaska State Trooper John Probst and Assistant District Attorney Benjamin Jaffa.[1]  At Docket 45 is Defendant Probst's Motion for Summary Judgment.  At Docket 47 is Defendant Jaffa's Motion to Dismiss.  Kurka filed an opposition to both motions at Docket 58.  Defendants filed a combined Reply at Docket 65.  Oral argument on both motions was held on August 4, 2014.  For the following reasons, the Court will grant each of the Defendants' motions.

## BACKGROUND

      This litigation arises out of Trooper Probst's investigation of a report filed by Kurka and the subsequent filing of criminal charges against Kurka.  Kurka was charged with two

---

[1] Docket 1-1 (Amended Compl.).

counts of Making A False Report in violation of AS 11.56.800(a)(1) and (2) on May 23, 2011.[2] On August 9, 2011, Jaffa, the Assistant District Attorney assigned to the case, filed a dismissal of the charges pursuant to Alaska Criminal Rule 43(a).[3]

While the criminal case was still pending, on June 20, 2011, Kurka filed a complaint in Alaska Superior Court against the State of Alaska, asserting constitutional violations pursuant to 42 U.S.C. § 1983 as well as a defamation claim.[4] The state moved to dismiss. In an Order dated October 10, 2011, the trial court granted the state's motion, holding that the state was immune from the defamation claim and not a "person" subject to suit under § 1983. The trial court also denied Kurka's motion to amend his complaint to raise claims against Probst and Jaffa, holding that "[a]llowing the amendment would be futile as Trooper Probst and Assistant District Attorney Jaffa enjoy official immunity."[5] Kurka appealed to the Alaska Supreme Court. That Court reversed and remanded as to Kurka's claims against Probst and Jaffa. The Supreme Court held that Kurka should have been permitted to amend his complaint to add a claim for malicious prosecution and that the trial court should not have found qualified immunity for Probst or Jaffa from the face of the proposed amended complaint on a motion to dismiss.[6] On remand, Kurka filed an

---

[2] Docket 45-2 (Misdemeanor Compl.); Docket 45-1 (Courtview Docket).

[3] Docket 45-4 (Dismissal).

[4] Docket 9-1 at 1-5 (Summons and Complaint).

[5] Docket 9-2 at 45 (Order).

[6] *Kurka v. State of Alaska*, No. S-14522, 2012 WL 5883277 (Alaska Nov. 21, 2012). The Alaska Supreme Court noted that there were other reasons the complaint may fail, including absolute immunity for prosecutors, an absolute defamation privilege for statements made during judicial proceedings, and because "it is unclear what specific federal constitutional provision Kurka claims was violated for his § 1983 claim or what federal immunities might apply." *Id.* at *2.

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 2 of 20

amended complaint in state court against Jaffa and Probst alleging federal constitutional violations pursuant to § 1983, as well as state law defamation and malicious prosecution claims.[7] On February 19, 2013, Jaffa and Probst filed a Notice of Removal to this Court based on federal question jurisdiction in light of the § 1983 claims.[8]

## DISCUSSION

### I. Jurisdiction

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

### II. Assistant District Attorney Benjamin Jaffa's Motion to Dismiss

Jaffa moves to dismiss Kurka's claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6), which permits a party to seek dismissal of an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."[9] To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] "Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of the elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct

---

[7] Docket 1-1 (Am. Compl.).

[8] Docket 1 (Notice of Removal) at 2.

[9] *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 3 of 20

that entitles the pleader to relief."[11] All reasonable inferences must be drawn in favor of the non-moving party.[12] A court should not look to "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[13]

**A. Federal Claims**

In his motion, Jaffa asserts that he is entitled to absolute immunity for the § 1983 claims pursuant to the United States Supreme Court's decision in *Imbler v. Pachtman* and its progeny. In *Imbler*, the Supreme Court held that a prosecutor was absolutely immune from suit under 42 U.S.C. § 1983 when initiating a prosecution or prosecuting the state's case.[14] The Supreme Court found that these "activities were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force."[15] The Supreme Court also held in *Imbler* that absolute immunity extends to suits for malicious prosecution brought under federal law.[16] More recently, in *Buckley v. Fitzsimmons*, the Supreme Court held that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are

---

[11] *Somers v. Apple, Inc.*, 729 F.3d 953, 959–60 (9th Cir. 2013) (citations omitted) (internal quotation marks omitted).

[12] *Holden v. Hagopian*, 978 F.2d 1115, 1118 (9th Cir. 1992).

[13] *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

[14] 424 U.S. 409 (1976).

[15] *Id.* at 430.

[16] *Id.*

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 4 of 20

entitled to the protection of absolute immunity."[17] Courts in this circuit have observed that even an alleged "improper motive" does not negate absolute immunity for prosecutors.[18] Jaffa maintains that "filing a criminal complaint and prosecuting the case are actions performed by Jaffa in his role as an advocate for the State of Alaska" and are thus acts for which he is entitled to absolute immunity.[19]

Kurka's opposition primarily reiterates and expands on the allegations in his Amended Complaint. His main arguments against Jaffa's assertion of absolute immunity appear to be that (1) "Jaffa willfully and with intent did not bother to understand the evidence presented to him,"[20] and (2) there is an exception to absolute immunity for malicious prosecution.[21]

Defendants' combined Reply acknowledges Kurka's allegations that Jaffa "willfully and with intent did not bother to understand the evidence."[22] Nonetheless, pursuant to established Supreme Court precedent, even if Kurka were to prove that Jaffa acted willfully or maliciously, the prosecutor's immunity is absolute. Moreover, absolute prosecutorial immunity extends to Kurka's claims that Jaffa failed to adequately

---

[17] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

[18] *Anderson v. City of Bellevue*, 862 F. Supp. 2d 1095, 1102 (W.D. Wa. 2012).

[19] Docket 47 (MTD Br.) at 12 (citing *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)).

[20] Docket 58 (Opp'n) at 20.

[21] Docket 58 (Opp'n) at 23-24. Kurka references the Fifth and Fourteenth Amendments of the U.S. Constitution. However, as noted by the Defendants, the Supreme Court has indicated in a plurality opinion that the Fourth Amendment, rather than a right to substantive due process, is a more appropriate vehicle for a malicious prosecution claim under § 1983. *See* Docket 47 (Mot.) at 8 (citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994), *rehearing denied* 510 U.S. 1215 (1994)).

[22] Docket 65 (Reply) at 2.

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 5 of 20

investigate the evidence against Kurka because that investigation is "intimately associated with the judicial phase of the criminal process."[23]

The Court therefore grants Jaffa's motion to dismiss the § 1983 claims on the basis of absolute immunity.[24] To the extent that Kurka is making a defamation or malicious prosecution claim under § 1983, absolutely immunity extends to such claims pursuant to the United States Supreme Court's holding in *Imbler*.[25] Likewise, absolute immunity would extend to Kurka's passing reference to alleged *Brady* violations in his opposition.[26]

As the Supreme Court recognized, "this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest."[27]

---

[23] *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009). *See also Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) ("A prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges.").

[24] The Alaska Supreme Court stated that it could not "see how the superior court could make a qualified immunity determination from the face of Kurka's complaint." *Kurka*, 2012 WL 5883277 at *2. But the Alaska Supreme Court expressly did not consider whether Jaffa would be protected by absolute immunity. *Id.*

[25] *Imbler*, 424 U.S. at 422-23, 427 (holding that prosecutor enjoys same absolute immunity under § 1983 as at common law, which included immunity based on indictment and prosecution). *See also Borg v. Boas*, 231 F.2d 788, 794 (9th Cir. 1956) ("[A] written charge or information filed with the prosecutor or the court is not libelous although proved to be false and unfounded.").

[26] Docket 58 (Opp'n) at 16. *See Broam*, 320 F.3d at 1030 ("A prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction . . . is . . . an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages . . . .").

[27] *Imbler,* 424 U.S. at 427. Yet the Supreme Court recognized that "the immunity of prosecutors from liability in suits under § 1983 does not leave the public powerless to deter misconduct or to punish that which occurs. This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law." *Id.* at 428.

3:13-cv-00034-SLG*, Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 6 of 20

## B. State Claims

Jaffa maintains that "Kurka's state constitutional claims should also be dismissed [because] Alaska has no statutory equivalent to 42 U.S.C. § 1983 and the Alaska Supreme Court has never recognized a state-law tort claim for alleged violation of the Alaska Constitution."[28] But the Court does not read Kurka's Amended Complaint to allege any state constitutional claims, nor does Kurka pursue or clarify any such claims in his opposition.

Kurka does plead a state law defamation claim against Jaffa, which appears to be based on the fact that a notice of the criminal charge filed against him was published in a newspaper.[29] However, Alaska recognizes a defamation privilege for statements made during a judicial proceeding.[30] Therefore, the act of charging someone with a crime, which results in that public record being reported in a newspaper, cannot be the basis for a defamation claim under state law against the charging Assistant District Attorney. Accordingly, the Court dismisses Kurka's state law defamation claim against Jaffa.

To the extent that Kurka seeks to maintain a malicious prosecution claim under state law against Jaffa, the Court finds that the Alaska Supreme Court would likely adopt and apply absolute immunity to prosecutors for such a claim. While the Alaska Supreme

---

[28] Docket 47 (MTD Br.) at 12-13.

[29] *See* Docket 1-1 (Am. Compl.) at 2 ("[T]hanks to the false affidavit of Probst and no verifying by Jaffa, Kurka's name was printed in the papers and branded a liar in his community . . . ."). *See also* Docket 58 (Opp'n) at 47 (pointing to Docket 55-24).

[30] *See Kurka*, 2012 WL 5883277 at *2 (citing *MacDonald v. Riggs*, 166 P.3d 12, 17 (Alaska 2007) (finding that statements were "not made in the course of any judicial proceeding and therefore were not privileged.")).

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 7 of 20

Court has not directly ruled on whether absolute immunity applies to prosecutors in a malicious prosecution claim under state law,[31] its adoption of federal precedent in applying qualified immunity strongly suggests that it would similarly extend absolute immunity to prosecutors for malicious prosecution claims.[32] Additionally, Kurka has not alleged any facts that would support an assertion that Jaffa proceeded with the case against Kurka out of "malice or a primary purpose other than that of bringing an offender to justice."[33] Rather, Kurka's principal claim against Jaffa appears to be that Jaffa "did not study the evidence presented to him."[34] Accordingly, Jaffa is entitled to dismissal of the state law malicious prosecution claim against him.

For the foregoing reasons, the Court will grant Jaffa's Motion to Dismiss. When granting a motion to dismiss, "[a] district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations."[35] "Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."[36]

---

[31] *Kurka*, 2012 WL 5883277 at *2 n.14 (citing *Malley v. Briggs*, 475 U.S. 335, 342 (1986) for "common law rule that prosecutors are absolutely immune from malicious prosecution claims.").

[32] *See Maness v. Daily*, 307 P.3d 894 (Alaska 2013) (Alaska "chose to follow federal precedent for determining whether qualified immunity should be conferred for official acts alleged to contravene a statutory or constitutional mandate." (internal citations and quotation marks omitted)).

[33] *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007).

[34] Docket 58 (Opp'n) at 23.

[35] *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

[36] *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 8 of 20

Under the United States Supreme Court's ruling in *Imbler*, absolute immunity protects Jaffa from all claims brought by Kurka under § 1983,[37] such that any amendment with respect to those claims would be futile. Likewise, Alaska's defamation privilege for statements made during judicial proceedings also renders any amendment of that state law claim futile.

The only remaining claim for which the Court could possibly grant Kurka leave to amend as to Jaffa is a malicious prosecution claim under state law. But, as noted above, although the Alaska Supreme Court has not directly ruled on whether absolute immunity applies to prosecutors, the Court finds that the Alaska Supreme Court would be quite likely to extend absolute immunity to Jaffa for such a claim such that it would therefore be futile to allow an amended complaint that presented facts that might support such a claim. Accordingly, complete dismissal of Jaffa from this case is warranted.

### III. Alaska State Trooper John Probst's Motion for Summary Judgment

Probst has moved for summary judgment, asserting that he has qualified immunity. Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party initially bears the burden of proving the absence of a genuine issue of material fact."[38] In cases where the non-moving party bears the burden of proof at trial, the moving party "need only prove that

---

[37] 424 U.S. at 416-31.

[38] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 9 of 20

there is an absence of evidence to support the non-moving party's case."[39] If the moving party meets this burden, then the non-moving party must present specific evidence demonstrating the existence of a genuine issue for trial, i.e., "evidence from which a jury could reasonably render a verdict in the non-moving party's favor."[40] The non-moving party may not rely on mere allegations or denials.[41]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party and draw "all justifiable inferences" in the non-moving party's favor.[42] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[43] Unlike a motion to dismiss, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . . affidavits or declarations . . . or other materials . . . ."[44]

---

[39] *Id.* (citing *Celotex*, 477 U.S. at 325).

[40] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

[41] *Anderson*, 477 U.S. at 248. The non-moving party may rely on any of the evidentiary materials listed in Rule 56(c). *Celotex*, 477 U.S. at 324. This includes depositions, documents, affidavits, stipulations, and discovery materials. *See* Fed. R. Civ. P. 56(c)(1).

[42] *Anderson*, 477 U.S. at 255.

[43] *Id.* at 249–50.

[44] Fed. R. Civ. P. 56(c)(1)(a). *See also* Docket 49 (Order/Notice) (informing Kurka of the requirements for opposing a summary judgment motion).

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 10 of 20

## A. Federal Claims

Probst's motion for summary judgment asserts that Kurka's claims against him are barred by the doctrine of qualified immunity.[45] Qualified immunity, when applicable, protects government officials from liability for civil damages.[46] The purpose of qualified immunity is to "balance[ ] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[47] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."[48] "[I]n order to determine whether qualified immunity protects a government official, a court must decide, first, whether a plaintiff has produced evidence showing that the official violated a constitutional right and, second, whether that right was 'clearly established' at the time of the alleged misconduct."[49] "[L]ower courts have discretion to decide which of the two prongs of qualified-immunity to tackle first."[50] A plaintiff must establish both prongs of the analysis, so that if a court determines that one prong is not met, then qualified immunity applies.

---

[45] Docket 45 (MTD Br.) at 14-20.

[46] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[47] *Pearson*, 555 U.S. at 231.

[48] *Messerschmidt v. Millender*, --- U.S. ---, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks and citations omitted).

[49] *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012).

[50] *Ashcroft v. Kidd*, 131 S. Ct. 2074, 2080 (2011).

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 11 of 20

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability[,] it is effectively lost if a case is erroneously permitted to go to trial.'"[51] Accordingly, the United States Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."[52] The Ninth Circuit has held that

> a district court should decide the issue of qualified immunity as a matter of law when "the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts."[53]

The Ninth Circuit has held that, "'[e]ven absent probable cause, qualified immunity is available if a reasonable police officer *could have* believed that his or her conduct was lawful, in light of the clearly established law and the information the searching officers possessed.'"[54]

In *Messerschmidt v. Millender*, the United States Supreme Court considered the application of qualified immunity to officers who had obtained a warrant authorizing the search of a home for firearms and gang-related material.[55] The homeowners sued the officers, among others, alleging that the search warrant was invalid. On the defendants' motion for summary judgment, the District Court found that the authorization in the

---

[51] *Pearson,* 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[52] *Pearson*, 555 U.S. at 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

[53] *Conner v. Heiman*, 672 F.3d at 1131 (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 970-80 (9th Cir. 2003), *cert. denied* 540 U.S. 1218 (2004)).

[54] *Blankenhorn v. City of Orange*, 485 F.3d 463, 492 (9th Cir. 2007) (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003)) (emphasis added).

[55] *Messerschmidt v. Millender*, __ U.S. __, 132 S. Ct. 1235, 1242 (2012).

3:13-cv-00034-SLG*, Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 12 of 20

warrant was unconstitutionally overbroad because the crime at issue was assault with a specific weapon (a black sawed-off shotgun) "negating any need to 'search for all firearms.'"[56] The Court also found that the warrant was overbroad in authorizing a search for all gang-related materials because there was no evidence that the assault was gang related.[57] On review, the United States Supreme Court considered whether the officers were "entitled to immunity from damages, even assuming that the warrant should not have been issued."[58] Taking into consideration that the warrant had been approved by a supervising officer, a deputy district attorney, and the issuing magistrate, the Supreme Court held that "it cannot be said that no officer of reasonable competence would have requested the warrant. Indeed, a contrary conclusion would mean not only that [the officers] were plainly incompetent, but that their supervisor, the deputy district attorney, and the magistrate were as well."[59] The Supreme Court thus held that even if the warrant was constitutionally invalid, "it was not so obviously lacking in probable cause that the officers can be considered plainly incompetent for concluding otherwise," and held the officers were entitled to qualified immunity.[60]

The Ninth Circuit has applied qualified immunity to shield from civil liability investigating officers who have incorrectly assessed the facts of a particular case. In

---

[56] *Messerschmidt*, 132 S. Ct. at 1243 (quoting the district court).

[57] *Id.* at 1243.

[58] *Id.* at 1244.

[59] *Id.* at 1249 (internal citations and quotation marks omitted).

[60] *Id.* at 1250-51 (internal citations and quotation marks omitted).

3:13-cv-00034-SLG*, Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 13 of 20

*Rodis v. City & County of San Francisco*, officers arrested a man they believed had attempted to use a counterfeit bill. After it was subsequently determined that the bill was genuine, the arrestee brought a lawsuit pursuant to § 1983. The District Court denied the officers' motion for summary judgment based on qualified immunity. The Ninth Circuit initially affirmed that ruling,[61] but the United States Supreme Court reversed and remanded. On remand, the Ninth Circuit found the officers were entitled to qualified immunity. The circuit court, quoting the United States Supreme Court, observed that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present. . . . In such cases those officials . . . should not be held personally liable."[62] "The qualified immunity standard gives ample room for mistaken judgments . . . ."[63] The Ninth Circuit concluded that, "[a]lthough the arrest was unfortunate, we cannot say that the Defendants' belief that [the bill] was fake was plainly incompetent."[64]

Here, when this case was first considered by the state trial court, it was on a motion to dismiss Kurka's complaint on its face. Now, in support of his motion for summary judgment, Probst has submitted a detailed affidavit, which describes Kurka's report and Probst's follow-up investigation, culminating in Probst's decision to file the Misdemeanor

---

[61] 499 F.3d 1094 (9th Cir. 2007), *vacated* 555 U.S. 1151 (2009).

[62] 558 F.3d 964, 970-71 (9th Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)) *cert. denied* 558 U.S. 1110 (2010).

[63] 558 F.3d at 970 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

[64] *Rodis*, 558 F.3d at 971.

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 14 of 20

Complaint against Kurka for false reporting.[65] Probst's affidavit states that Kurka reported the theft of artwork, office equipment, and payroll records from his business. Kurka identified a former employee as responsible for the thefts. Probst's affidavit indicates that after interviewing Kurka on several occasions and "itemiz[ing] the items that were allegedly stolen," Probst obtained a search warrant for the former employee's home and seized certain items there that were similar to those that Kurka had described.[66] However, the former employee claimed the items were hers and later produced receipts for them. Probst avers in his affidavit that during his investigation he learned that the former employee had filed a sexual harassment claim against Kurka with the Alaska State Commission for Human Rights and had also filed a wage claim against Kurka with the Alaska Department of Labor and Workforce Development. Probst's affidavit also states that he went to Kurka's business office and found the employee records that Kurka had claimed had been stolen by the former employee.

Probst asserts that he then asked the Court for a summons. He adds that he had no further involvement in the case once Kurka was charged.[67] In this regard, Probst asserts that law enforcement officers have a rebuttable presumption of absolute immunity

---

[65] Docket 50-1 (Probst Aff.).

[66] Docket 50-1 (Probst Aff.) at ¶¶ 4-14.

[67] Docket 45 (MSJ Br.) at 17. Docket 50-1 (Probst Aff.) at ¶¶ 20-21. *But see* Docket 45-1 (Courtview Docket) at 2 reflecting that the Misdemeanor Complaint was filed on May 23, 2011 and Docket 50-1 (Probst. Aff.) at ¶ 23, which details Probst's contact with the son of Kurka's former employee on June 9, 2011, after Kurka was charged.

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 15 of 20

once a criminal complaint has been filed and that that presumption applies to him once the complaint was filed.[68]

Kurka attaches 34 exhibits to his opposition, including business records, investigation documents, records connected with related proceedings, correspondence, and the newspaper notice of his charge.[69] Kurka's primary focus in his opposition is that Probst intentionally failed to investigate Kurka's report and was biased against Kurka in the investigation prior to filing the Misdemeanor Complaint against him.[70] Kurka maintains that his numerous exhibits demonstrate that Probst was misled by Kurka's former employee in the investigation and ignored relevant information. A primary fact that Kurka disputes is Probst's assertion that when he visited Kurka's business office on May 13, 2011, he found the employee records that Kurka had stated were stolen. Kurka asserts that these records were not, in fact, the employee records that he had reported missing and that the three records Probst purportedly discovered were far fewer than the 35 records that Kurka had reported stolen.[71] Kurka asserts that this should have been obvious to Probst.[72] Kurka also alleges that the artwork receipts produced by the former

---

[68] Docket 45 (MSJ Br.) at 20 (relying on *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981), *cert. denied* 459 U.S. 829 (1982), *overruled on other grounds by Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008)).

[69] Docket 55-1—34 (Exhibits).

[70] Docket 58 (Opp'n) at 32-38.

[71] Docket 58 (Opp'n) at 9-11, 43.

[72] *See* Docket 58 (Opp'n) at 35 (arguing that Probst should have compared the number of files he found to the number Kurka reported stolen and that "any reasonable person would have recognized that 3 files does not equal 35 employee files, even John Probst which shows he was with malice this is not a mistake a reasonable person would make.").

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 16 of 20

employee were falsified and points to several exhibits that he claims so demonstrate.[73] Kurka's position appears to be based on Kurka's handwriting analysis comparing a document written by his former employee with an artwork receipt produced by that employee.[74] Kurka asserts that he "took his plates and real receipts into the [Alaska State Troopers] office" but they "were rejected."[75] Because the Court accepts all of the evidence presented by the non-moving party as true and draws all justifiable inferences in the non-moving party's favor in determining a motion for summary judgment, the Court assumes that Probst did err in concluding that the employee files he found were the same files that Kurka had reported missing and erred in concluding that Kurka's former employee had produced accurate receipts demonstrating her ownership of the artwork.

As discussed above, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law. . . . Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."[76] The Ninth Circuit has held that there is a clearly established right "not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."[77] This would

---

[73] Docket 58 (Opp'n) at 6-7.

[74] Docket 58 (Opp'n) at 67 (citing Docket 55-14 and 55-16).

[75] Docket 58 (Opp'n) at 39.

[76] *Messerschmidt*, 132 S. Ct. at 1244-45 (internal citations and quotation marks omitted).

[77] *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc).

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 17 of 20

also appear to extend to include a right not to be subject to criminal charges that arise from a plainly incompetent investigation.[78]

Kurka's argument merges accusations that Probst deliberately "falsified evidence" with allegations that Probst's investigation was incompetent. His assertions against Probst generally fall in between these two concepts but appear to fall more on the side of alleged incompetence rather than a deliberate falsification of evidence. For although Kurka alleges that Probst "falsified evidence,"[79] he makes no showing that Probst's conduct in this regard was deliberate.[80]

In asserting that Probst is not entitled to qualified immunity, Kurka states that "any reasonable person would have recognized that 3 files does not equal 35 employee files . . . ."[81] Likewise, he maintains that Probst should have recognized that the artwork belonged to Kurka.[82] Kurka maintains, therefore, that "Probst's conduct did violate clearly established statutory and constitutional rights of which a reasonable person would have known."[83] But even assuming, for summary judgment purposes, that Probst negligently and incorrectly concluded that the employee files found in his investigation were those reported missing and that the former employee had produced valid receipts

---

[78] *Messerschmidt*, 132 S. Ct. at 1249-50.

[79] Docket 58 (Opp'n) at 3.

[80] *See, e.g.*, Docket 58 (Opp'n) at 12 (stating that Probst is misstating the facts to the Court in his affidavit instead of admitting "he made a mistake.").

[81] Docket 58 (Opp'n) at 35.

[82] Docket 58 (Opp'n) at 14-15.

[83] Docket 58 (Opp'n) at 35.

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 18 of 20

demonstrating ownership of the artwork, such a conclusion is not so plainly incompetent or in knowing violation of the law so as to be actionable under federal law.[84] In short, even viewing the facts in the light most favorable to Kurka, "it cannot be said that no officer of reasonable competence" would have filed the complaint against Kurka.[85]

Additionally, while Kurka asserts a due process requirement that the prosecution disclose favorable evidence,[86] it is not clear what evidence Kurka is maintaining was not disclosed. Nor does Kurka point to any case law indicating that a police officer's alleged failure to disclose evidence is actionable in a civil proceeding.[87]

Based on the above, the Court finds that Probst is protected by qualified immunity for his investigation and grants summary judgment in his favor on all of the § 1983 claims, including any federally-based claims for malicious prosecution or defamation.[88]

### B. State Law Claims

To the extent Kurka's claims against Probst, such as malicious prosecution or making a false report,[89] may arise under state law, Alaska's qualified immunity doctrine

---

[84] *See Messerschmidt*, 132 S. Ct. at 1244.

[85] *See id.* at 1249 (internal quotation marks and citation omitted).

[86] Docket 58 (Opp'n) at 35.

[87] *Cf. Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "suppression *by the prosecution* of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment . . . ." (emphasis added)).

[88] To the extent Kurka is making a claim that his substantive due process rights were violated by Probst's investigation, the Court finds that this claim also fails and qualified immunity applies because the investigation cannot be said to "shock the conscience." *See Amrine v. Brooks*, 522 F.3d 823, 833-34 (8th Cir. 2008).

[89] Kurka's Amended Complaint states that "Defendants did unlawfully commit the offence of Making a False Report" but this claim is not pursued in his opposition to the Defendants' motions.

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 19 of 20

follows the same analysis as that described in the cases under § 1983, such that Probst is also entitled to qualified immunity on all such state law claims.[90]

Finally, for the same reasons set forth in Part II of this opinion with respect to Jaffa, Kurka's state law defamation claim against Probst is also dismissed with prejudice.[91]

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant John Probst's Motion for Summary Judgment at Docket 45 and Defendant Benjamin Jaffa's Motion to Dismiss at Docket 47 are both **GRANTED**. The Clerk of the Court is directed to enter final judgment for Defendants Benjamin Jaffa and John Probst dismissing this action with prejudice.

DATED this 2nd day of February, at Anchorage, Alaska.

/s/ Sharon L. Gleason
United States District Judge

---

[90] *See Maness v. Daily*, 307 P.3d 894 (Alaska 2013) (Alaska "chose to follow federal precedent for determining whether qualified immunity should be conferred for official acts alleged to contravene a statutory or constitutional mandate." (internal citations and quotation marks omitted)). *See also Russell ex rel J.N. v. Virg-In*, 258 P.3d 795, 802 (Alaska 2011) (discussing and applying qualified immunity standard).

[91] Unlike Jaffa's Motion to Dismiss, here the Court is granting summary judgment in favor of Probst and each side has been given ample opportunity to present all the facts he believes are relevant. Accordingly, the Court will not grant Kurka an opportunity to file an amended complaint.

3:13-cv-00034-SLG, *Kurka v. Probst, et al.*
Order re Motion to Dismiss and Motion for Summary Judgment
Page 20 of 20